# THE SUPREME COURT

#### OF THE

# STATE OF NEVADA

## APRIL TERM, 1911

[No. 1971]

M. QUILICI, APPELLANT, v. I. A. STROSNIDER, C. T. MARTIN AND M. J. KING, AS THE BOARD OF COUNTY COMMISSIONERS OF LYON COUNTY, RESPONDENTS.

1. STATUTES — GENERAL AND SPECIAL LAWS — COUNTY-SEATS— CHANGE—NECESSITY OF SPECIAL LAW.

An act of the legislature provided that after May 1, 1911, the county commissioners of Lyon County should remove the offices and archives and other movable property from Dayton to Yerington. The general act of 1877 (Stats. 1877, c. 84) provides for the removal of county-seats by the majority of the voters at an election called on petition of three-fifths of the taxpayers who are electors. Section 21 of article 4 of the state constitution provides that in all cases enumerated in section 20, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform application throughout the state. Prior to the last general election the court-house at Dayton was destroyed by fire. *Held,* that the special act was justified on the ground that an emergency existed, calling for prompt action.

2. CONSTITUTIONAL LAW—STATUTES—PRESUMPTION OF CONSTITU-TIONALITY.

In all cases of doubt every presumption and intendment will be made in favor of the constitutionality of an act of the legislature.

VOL. 34—2

3. COUNTIES—LOCATION OF COUNTY-SEAT—CONTROL BY THE STATE.
   The legislature has complete control of the entire subject of counties and county-seats, except where prohibited by constitutional provisions.
4. STATUTES—GENERAL AND SPECIAL LAW—LOCATING COUNTY-SEAT.
   In locating a county-seat, it will depend upon the facts and circumstances of each case whether a special law is applicable.
5. STATUTES—SPECIAL ACTS—PRESUMPTION.
   If a special act be passed for a particular case, the presumption of the applicability of the general law is overcome by the presumption in favor of the special act that the general act was not applicable in that case.
6. STATUTES—SPECIAL OR LOCAL LAWS—LEGISLATIVE POWERS.
   The legislature is the exclusive judge as to whether a law on any subject not enumerated in the constitution can be made general and applicable to the whole state, and the judgment of the legislature as to whether a general law is applicable or special, or local laws are required regarding subjects not so enumerated, is conclusive.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Lyon County; *L. A. French*, Judge, presiding.

Action by M. Quilici against I. A. Strosnider and others, as the Board of County Commissioners of Lyon County. From a judgment dissolving a preliminary restraining order and denying an injunction, plaintiff appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Mark Walser* and *Geo. L. Sanford*, for Appellant:

The case at bar raises a question of fact, and not of law. The original decisions upon which this county-seat removal act is based so state. Those decisions also state that the courts must decide each particular case on the particular facts and circumstances of that case. For courts to decide, there must be an issue of fact raised by the pleadings and a trial. The issue raised in this case was, "Could the general law apply?" Testimony was introduced on the point by appellant. The respondents offered none.

If the verdict is manifestly contrary to the evidence, the supreme court will grant a new trial. Evidence

admitted must be given full weight even though incompetent. (*Watt* v. *N. C. O. Ry. Co.*, 23 Nev. 171; *Beck* v. *Thompson*, 22 Nev. 121.)

Where evidence is declared competent by the court the jury is bound to receive it and make it the basis of their verdict. (Spelling, New Trial, vol. 1, sec. 264.)

A presumption is merely a rule of law compelling the jury to reach a conclusion in the absence of evidence to the contrary. If such evidence is offered, however, the presumption disappears. (Wigmore, vol. 4, sec. 2491.)

The evidence must support the findings. (Comp. Laws, 3277, notes.)

In removal of county-seats "the particular facts and circumstances control." (*Evans* v. *Job*, 8 Nev. 322–324.)

In county-seat removals, the court should inquire if the general law could have applied. (*Hess* v. *Pegg*, 7 Nev. 23.)

Facts and circumstances are used interchangeably and are in fact synonyms. (Bouv. Law Dic.)

Circumstances are defined as an event, a fact, a particular incident, and the law is stated as correct which says in the view of the law, "from the evidence, the facts and circumstances, the jury should determine on which side is the preponderance." (*Pfaffenback* v. *Lake Shore M. & S. Ry. Co.*, 41 N. E. 530.)

Evidence signifies that which demonstrates, makes clear or ascertains the truth or very fact of the point in issue. (Blackstone, vol. 3, sec. 367.)

The point in issue in this case is, "Could the general law providing for the removal of county-seats apply?" (*Evans* v. *Job*, 8 Nev. 337.)

Burden of proof rests primarily on the side asserting the fact, and shifts when sufficient evidence is introduced to raise a presumption in his favor. (Jones on Ev., sec. 176, citing Steph. Ev. 95.)

The law requires nothing to be proven conclusively. (*Silver M. Co.* v. *Fall*, 6 Nev. 116.)

Regulation of township and county business forbidden by the constitution (sec. 20, art. 4).

County commissioners have right to control and manage

all real and personal property belonging to the county. (Comp. Laws, 2111.)

The act of 1911 directs that "commissioners shall sell the property incapable of removal." Whenever possible all laws shall be general and of uniform character. (Constitution, sec. 21, art. 4.)

General law on removal of county-seats has for its title "Act providing for removal of county-seats and permanent location of same."

"Permanent" defined in Words and Phrases, sec. 5310, "not temporary, or subject to change, remaining fixed."

The special act of 1901 does not fix county-seat permanently. By the terms of the act, it was intended for Lyon County, and was never intended for any other county, and is interdicted by the constitution. (*Singleton* v. *Eureka Co.*, 22 Nev. 91; *State* v. *Boyd*, 19 Nev. 43.)

Doubtful laws and laws capable of two constructions. (*Arnold* v. *Stevenson*, 2 Nev. 746; *Hayden* v. *Commissioners*, 2 Nev. 877; *O'Neal* v. *N. Y. & Silver Peak M. Co.*, 3 Nev. 126.)

When the supreme court has come to the conclusion that a mistake has been made, it will acknowledge the mistake and declare the true doctrine. (*Hines* v. *Driver*, 89 Ind. 339–342.)

The court during the oral argument has intimated that it was fully informed in another matter as to the law concerning the constitutionality of the act in controversy.

The appellant hereby submits his cause on the questions raised in this brief that the facts control.

*John Lothrop*, District Attorney, and *Huskey & Springer*, for Respondents:

It is the settled law in this state that the legislature has the power under proper circumstances to pass a special act for the removal of a county-seat. (*Hess* v. *Pegg*, 7 Nev. 23; *Evans* v. *Job*, 8 Nev. 322; *State* v. *Swift*, 11 Nev. 142.)

It is the settled law in this state that when the legislature passes such an act, the passage thereof raises a

presumption that the general law on the subject of the removal of county-seats "was not and could not be made applicable." Until that presumption is rebutted the law is presumed constitutional. And in this respect the court will not "oppose its judgment to that of the legislature excepting in a case admitting of no reasonable doubt."

Facts tending to show that the original county-seat has buildings for the county offices, while the new county-seat has none; that the old county-seat is more accessible than the new; that the plaintiff's taxes will be increased by the move, and hence facts of a similar nature are matters of expediency to be submitted to the legislature, but "in no wise tend to prove whether or not a general law for the removal of county-seats was applicable" to the county in question, "which is the only question for us (the court) to consider." (8 Nev. 340.)

"Hardly any subject can be conceived more purely local than the fixing of a county-seat, and if in any case local legislation is proper, that is the one." (6 Nev. 30.)

This case is on all-fours with the Washoe County and Humboldt County cases decided in *Hess* v. *Pegg* and *Evans* v. *Job.* The statute is almost word for word the same as the statute construed in those cases. At the time those cases were decided there existed a general law on the subject of the removal of county-seats. In both cases the statute was attacked upon the same grounds as the statute in this case is attacked. After those cases were decided, this court in the case of *State* v. *Swift*, in construing the statute incorporating the city of Carson, said in most emphatic terms that the rules laid down in *Hess* v. *Pegg* and *Evans* v. *Job* "must now be regarded as the settled law of this state."

We therefore stand squarely on the doctrine of *stare decisis.*

There are particularly urgent reasons of expediency why the doctrine of *stare decisis* should be followed in this case. Relying upon the principles laid down in those cases many county-seats have since been removed by special act, which has in each case followed the wording

of the acts construed in those cases.   We refer the court
to the following instances of removal of county-seats by
special act in this state: Statutes of 1871, p. 59; Statutes
of 1873, p. 59; Statutes of  1883, p. 95; Statutes of 1887,
p. 27; Statutes of 1905, p. 18; Statutes of 1907, p. 20.

Should *Hess* v. *Pegg* and *Job* v. *Evans* be now overruled
the confusion resulting in the public interests would be
unthinkable.   As a single·illustration, what would be the
effect upon judicial proceedings had during all these
years at a point other than the old county-seat?   Again,
a reversal of those cases would unsettle the very founda-
tions of our local government in other respects.   No logi-
cal distinction can be drawn between the character of an
act changing a county-seat and acts establishing counties,
fixing the county-seats of new counties, carving new
counties out of old, changing county lines, etc., with
which our statutes are fairly plastered.   If it can be
said that a general law is applicable to the removal of
county-seats, it can be said that a general law can be
framed which will be applicable to the creation of new
counties, the division of counties, etc.   A reversal of *Hess*
v. *Pegg* and *Job* v. *Evans* would be. in effect a reversal of
*State* v. *Irwin,* 5 Nev. 111; *State* v. *McKinney,* 5 Nev. 194;
*Youngs* v. *Hall,* 9 Nev. 212; and the recent case of *State*
v. *Lytton,* 31 Nev. 67, and possibly of *State* v. *Swift,* 11
Nev. 128.   Such a reversal would make the doctrine of
*stare decisis* illusory in this state, and would encourage
counsel to attack any and every doctrine previously
settled by court.

Unless, therefore, this case can be distinguished in
some way from *Hess* v. *Pegg,* or *Evans* v. *Job,* the consti-
tutionality of the act of 1911 must be upheld.

The only claim that appellant makes, as we understand
it, is that the evidence in this case shows a different
state of facts from that existing in Washoe and Humbolt
Counties.

Only two new circumstances appear in this case:

*First*—The pleadings admit that two petitions for the
removal of the county-seat of Lyon. County were filed

under the general law, one on June 7, 1909, and one some time during 1910, date not fixed, and that neither petition resulted in the calling of an election. If these petitions are evidence of anything, they are evidence of conditions existing at the time they were filed, and not of conditions existing in Lyon County in 1911, as to which there is no evidence before the court. With respect to the time to which they relate they are only evidence, if evidence at all, that in June, 1909, and at some time which does not appear in 1910, the petitions were insufficient for the purpose for which they were presented, whether because a sufficient number of names could not be secured, whether because they were not sufficiently circulated to secure the names of sufficient signers, or whether because they were insufficient in form, does not appear. We think the court is not entitled to draw on presumptions at all from these facts, but if presumptions are to be indulged in it is certainly a fair presumption that the people of Lyon County after fair trial found the general law on the subject of the removal of county-seats inapplicable to their county.

*Second*—Certain evidence was admitted under objection to the effect that the witnesses knew of no emergency which necessitated the passage of the special act of 1911. This evidence was improperly admitted. It was merely a declaration of ignorance on the part of the witnesses as to the existence of certain facts. The witnesses did not testify directly that no facts or circumstances requiring the passage of the special act existed; they merely testified that they did not know of the existence of such facts.

We invite especial attention to the form of the two questions:

"Do you know of any fact or circumstance existing in Lyon County in February, 1911, which would have prevented the general law providing for the removal of county-seats from applying?"

No foundation was laid for such a question. There was nothing to show that witness had any knowledge of the provisions of the general law, or that he knew that such

a law was in existence. The question assumed that there was a general law, and that the witness was familiar with its provisions. Before the witness was invited to draw inferences as to the effect of facts in relation to the operation and applicability of the general law, he should have been shown to possess adequate knowledge and capacity. (17 Cyc. 29, 30, 31.)

The question asked for the conclusion of the witness as to the facts. He was invited to testify to the ultimate fact that certain facts and circumstances did not exist, without first testifying as to what such nonexistent facts were. He should have been asked specifically to state what conditions did or did not exist in February, 1911, and left the ultimate inference or conclusion from such facts to the court. (17 Cyc. 209–212.)

The question called for the conclusion of the witness on a question of law. The existence or nonexistence of facts having first been shown, it then became a question of law as to what effect the existence or nonexistence of such facts might have had upon the applicability of the law to Lyon County. The witness, however, was invited by the question to decide a nice point of law, namely, what facts might prevent the applicability of the general law, it not even appearing that he knew anything of the provisions of the general law. A witness is not permitted to testify to the legal result of a transaction or series of transactions. (17 Cyc. 219.)

The evidence was not of that character of negative evidence such as when a witness testifies that having examined books he found no entries therein, or that being at a certain place at a certain time he did not hear the report of a gun. It was merely a declaration of ignorance as to facts which might or might not exist, and which might have been within the knowledge of hundreds of other people, but not necessarily within their knowledge. If competent at all, it is therefore manifestly entitled to little or no weight against the presumption that exists that the legislature acted with full knowledge of the

facts, and the presumption created by the passage of the special act that an emergency did exist.

The second question was: "Do you know of any condition or emergency existing in Lyon County in February, 1911, which necessitated the passage of the special act by the legislature?"

This question is subject to all the objections previously urged, and to the further objection that the attention of the witness was not even called to the particular act as to the legal effect of which or legal necessity of which he was invited to hazard his guess. There were many special acts passed by the last legislature, at least two of them relating to Lyon County. Had the question been admissible witness's attention should have been directed to the particular act which counsel had in mind. There was nothing in the previous testimony from which the witness could even infer what act was referred to.

If this class of testimony were permitted to prevail over the presumption raised by the passage of the act, it would be possible for a few interested citizens in any county in this state where the county-seat has been previously removed by special act to have that special act still declared unconstitutional and the county-seat moved back to the old site by simply testifying in a suit brought to test the law that they do not know of any emergency which called for the passage of the law.

Only one witness was asked if he was familiar with conditions in Lyon County. The record will show that all the rest would have testified, if placed on the stand, to the facts in question without even that preliminary question.

Reverting to the question of the constitutionality of the law of 1911, we submit that an act removing a county-seat cannot be considered as a regulation of "county business" within the meaning of section 20 of article 4 of the constitution. County business manifestly relates to the ordinary county affairs as transacted by its officers. The creation of counties, changing of lines, carving out

new counties and removal of county-seats deal with the organization of the county and not with its business. Illustrations as to what constitutes a regulation of county business will be found in *Williams* v. *Bidleman*, 7 Nev. 68; *State* v. *Boyd*, 19 Nev. 47; *Singleton* v. *Eureka County*, 23 Nev. 226. This court has even held matters which would seem to approach much more closely to county business, such as the issuance of bonds for local purposes, and the creation of a special redemption fund, to be proper matters for special legislation. (*Youngs* v. *Hall*, 9 Nev. 212; *State* v. *Lytton*, 31 Nev. 67.)

With reference to appellant's contention that the act contravenes section 25 of article 4 of the constitution, requiring the legislature to establish a system of county and township government which shall be uniform throughout the state, we deem it sufficient to suggest that this does not refer to organic acts creating the county or establishing or removing its county-seat. It is manifest that the government of Lyon County will be uniform with that of other counties, whether its county-seat is located at Dayton or Yerington.

*Per Curiam:*

Appellant here, as plaintiff in the district court, filed a complaint alleging that the defendants, as the county commissioners of Lyon County, were about to remove the county-seat from Dayton to Yerington, under the provisions of an act passed at the last session of the legislature, which provides that after the 1st day of May, 1911, the county-seat of Lyon County shall be located at the city of Yerington, that the county officers shall remove and keep their offices at the city of Yerington, and that the county commissioners shall provide for the removal from Dayton to Yerington of the archives and other movable property belonging to the county, and sell any immovable property belonging to Lyon County in the town of Dayton.

The complaint states that the plaintiff is a resident, taxpayer, and owner of property in the town of Dayton;

that the removal of the archives of the county, if not restrained by order of the court, will greatly depreciate the value of property there and greatly increase the tax rate in Lyon County; that, unless restrained, the respondents will carry out the proposed intention and remove the records and archives from the town of Dayton to the city of Yerington. It is alleged that the act of the legislature mentioned is void; that it is in conflict with section 20 of article 4 of the constitution of the State of Nevada, which provides that the legislature shall not pass local or special laws except in certain enumerated cases, and that it is in conflict with section 21 of article 4 of the constitution, which provides that "in all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform application throughout the state." After trial, the district court found that the defendants, constituting the board of county commissioners, intend to remove the archives and personal property of the county from Dayton to the city of Yerington and to sell the real property located at Dayton, as directed by the act of the legislature, and that the defendants were entitled to judgment denying the injunction prayed for and dissolving the preliminary restraining order granted.

It is urged that the special act providing for the removal of the county-seat of Lyon County is unconstitutional and void because a general law can be made to apply, and because the general act of 1877 (Stats. 1877, c. 84) providing for the removal of county-seats by the majority of the voters at an election called on the petition of three-fifths of the taxpayers who are electors is applicable to that county. Since the passage of this general statute, and during the time it has been in force, a number of county-seats have been removed under special acts of the legislature, and it has been the rule to so remove them for forty years. The earlier of these special acts, changing the county-seat of Washoe County from Washoe to Reno, and the county-seat of Humboldt County from Unionville to

Winnemucca, were tested, and the removal of them sustained by this court. Later special acts removing the county-seat of White Pine County from Hamilton to Ely, of Churchill County from Stillwater to Fallon, of Nye County from Belmont to Tonopah, and of Esmeralda County from Hawthorne to Goldfield, do not appear to have been resisted in the courts. The act now sought to be overthrown, relating to Lyon County, and all these acts, with the exception of changes in dates and places, are substantially copies of each other, and of the ones removing the county-seats in Washoe and Humboldt Counties, which were sustained by this court.

It was held in *State* v. *Irwin*, 5 Nev. 111, that the special act of 1869 (Stats. 1869, c. 60), creating White Pine County, was not unconstitutional, and, as in many decisions by this and other courts, that in all cases of doubt every presumption and intendment will be made in favor of the constitutionality of the act of the legislature. It was said in the opinion: "Hardly any case could be found or imagined where a general law could not be framed which would, in default of one special, answer some part of the purpose intended to be accomplished by legislation. But would such a general law be applicable is always the question. A law, to be applicable in the sense in which the words are evidently used, and their only proper sense in such connection, must answer the just purposes of legislation; that is, best subserve the interests of the people of the state, or such class or portion as the particular legislation is intended to affect. A general law could undoubtedly be passed regulating the organization of new counties, but it would be exceedingly difficult, if not impossible, to make such law applicable."

In the case sustaining the special act removing the county-seat of Washoe County from Washoe to Reno (*Hess* v. *Pegg*, 7 Nev. 22), it was held that the legislature had no authority to enact a local or special law when a general one can be made applicable; that the decision as to whether a general law may be made applicable, although primarily in the legislature and presumptively correct, is

subject to review by the courts; that where, notwithstanding the existence of a general statute in relation to the removal of county-seats, the legislature passed a special act for the removal of a particular county-seat, the presumption was that the general act was not and could not be made applicable; and that the legislature has complete control of the entire subject of counties and county-seats except where prohibited by constitutional provisions.

In *Evans* v. *Job*, 8 Nev. 322, it was held that the special act removing the county-seat of Humboldt County from Unionville to Winnemucca was not in violation of sections 20 and 21 of article 4 of the constitution, that these sections were intended to prohibit the legislature from passing special laws in the cases where a general law would be applicable, but that to be applicable the general law must be adapted to the wants of the people, suited to the just purposes of legislation or to effect the object sought to be accomplished. It was further held that these sections of the constitution recognize the fact that cases would arise in ordinary course of legislation requiring special laws to be passed where a general law might be applicable to the general subject, but not applicable to the particular case; that where only a portion of the people were affected, as in locating a county-seat, it will depend upon the facts and circumstances of each particular case whether such a law is applicable. It was also held that, where a special act has been passed in reference to a matter affecting only a portion of the people, it would be presumed to be valid unless facts were presented showing beyond any reasonable doubt that a general law is applicable; that the mere fact that the general law has been passed providing for the removal of the county-seat does not prove that it is applicable to a particular case, and if a special act be passed for a particular case, the presumption of the applicability of the general law is overcome by the presumption in favor of the special act that the general act was not applicable in that case. It was said that it is an almost uniform rule

in construing statutes and constitutions to adhere to former decisions.

In. *State ex rel. Rosenstock* v. *Swift,* 11 Nev. 129, the special act of 1875 (Stats. 1875, p. 87), providing for the incorporation of Carson City, was held constitutional, and the court said: "The fifth objection is that the law is void because 'it is a special law in a case where a general law exists and can be made applicable'; and it is therefore contended that the act was passed in violation of that clause of the twenty-first section of article 4 of the constitution, which declares: 'Where a general law can be made applicable, all laws shall be general and of uniform application throughout the state.' The argument in support of this proposition is that, inasmuch as a general law existed at the time of the passage of the act in question (Stats. 1873, p. 66) providing for the government of cities and towns, and the town of Carson having been organized under its provisions, it is, therefore, practically demonstrated that a general law can be made applicable. The principle involved in this proposition cannot be distinguished from that decided in *Hess* v. *Pegg,* 7 Nev. 23, and also in that of *Evans* v. *Job,* 8 Nev. 323. The same argument was urged against the validity of the acts respectively involved in those cases, and the same authorities cited in support thereof as are presented here. There was an elaborate opinion in each case in which all the authorities cited by counsel for the relator, as well as others bearing upon the subject, were fully reviewed, the result of which is an exposition of this provision of the constitution adverse to the position of relator, and the principle thus decided must now be regarded as the settled law of this state."

The legislature has since passed a general law for the incorporation of cities which has been sustained as constitutional. (Stats. 1907, p. 241; *State* v. *District Court,* 30 Nev. 225.) In addition to cities established under this general law, we have a number of special acts passed previously and subsequently for the creation of cities.

In *State* v. *Lytton,* 31 Nev. 67, citing and following ear-

lier decisions in this state and the case of *Lincoln County* v. *Luning,* 133 U. S. 532, 10 Sup. Ct. 363, 33 L. Ed. 766, we held that a special act providing for funds for the erection of a court-house was valid, and that the constitutionality of such acts must be considered as settled.

It was admitted upon the trial that numerous witnesses presented by the plaintiff would testify that they knew of no condition or emergency which would have prevented the calling of an election under the general law for the removal of county-seats or that necessitated the special act of the legislature. It may be admitted for the purposes of the case that the people desiring the removal could have proceeded under the general act, and that the testimony and conclusions of these witnesses were entirely true. Under the constitutional prohibition that no special act shall be passed by the legislature where a general law may be made applicable, we do not consider that the inhibition applies to every case where the county-seat might be removed under the general law regardless of any delay, inconvenience, or hardship it might occasion, but that the special law is proper and valid when, as said in the Irwin case, it will better answer the just purposes of legislation and best subserve the interests of the people of the state, or the portion for whose benefit the legislation is intended. There may have been special reasons existing which are presumed to have justified the legislature in passing the special act, and which are sufficient to make it effective and constitutional as a law desirable and necessary to prevent great inconvenience and undue hardship upon the people of Lyon County or a majority of them. Long prior to the last general election the court-house at Dayton was consumed by fire, and residents of Yerington and some other parts of the county away from Dayton sought to have the county-seat removed to Yerington under the general act providing for the removal of county-seats. More than a majority of the taxpayers of the county entitled to the right of suffrage filed with the board of county commissioners a petition for such removal, which was resisted by the resi-

dents of Dayton, and proceedings were brought to this court. It is said that the question of removal was made an issue in the election of representatives from that county to the legislature, and that the candidates favoring such removal were elected, and it may be presumed that the legislature was aware of these conditions.

The Supreme Court of Indiana, in *Gentile* v. *State*, 29 Ind. 412, *Wiley* v. *Bluffton*, 111 Ind. 152, 12 N. E. 165, *Bell* v. *Maish*, 137 Ind. 230, 36 N. E. 358, 1118, and *State* v. *Kolsem*, 130 Ind. 440, 29 N. E. 595, 14 L. R. A. 566, overruled the case of *Thomas* v. *Board*, 5 Ind. 4, upon which reliance has been placed, and went further than our court has done, and held that the legislature is the exclusive judge as to whether a law on any subject not enumerated in the constitution can be made general and applicable to the whole state, and that the judgment of the legislature as to whether a general law is applicable, or special or local laws are required regarding subjects not so enumerated, is conclusive. The negative testimony of the witnesses, instead of stating facts, carried with it their conclusion that they knew nothing to prevent the general law from applying, without giving the facts on which they may have based their conclusion, or the facts which may have caused the legislature to conclude that the special law was necessary. It is not shown that they had in mind the distinctions which would make the general law applicable or inapplicable as stated in *State* v. *Irwin*. Under the Indiana rule the legislature could determine the facts, and its judgment regarding them would be conclusive; and under the rule stated in *Hess* v. *Pegg*, 7 Nev. 23, whether the general law is applicable was for the legislature to determine in the first instance, and its conclusion was presumed to be correct, but subject to review by the court. The testimony of witnesses, if admissible at all, would be confined to the facts, and their conclusion could not be taken against that of the legislature and the courts.

It must be conceded that great financial loss will result to the property owners of Dayton by the removal of the

county-seat, and that it is natural for them to make an effort to prevent such removal for the protection of their own best interests. On the other hand, if the majority of the taxpayers and voters of the county live in localities where they will be under greater inconvenience and expense by having the county-seat at Dayton than at Yerington, the greater good to the greater number may result from the removal of the county-seat, although this may not be a sufficient reason for holding the law valid. The special act of the legislature may be better justified and sustained on the ground that the emergency and conditions were such as to make prompt action by special act of the legislature necessary in order to prevent undue hardship upon the residents and taxpayers of the county, which under existing conditions would have been caused by delay in proceeding under the general act.

Since the burning of the court-house a long time has been consumed by resisting removal of the county-seat under the general law and by waiting for the legislature to act at the instance of the members of the legislature from the county, which has been and is without a proper court-house or accommodations for conducting county affairs. If the emergency did not justify this special act, much more delay might be expected if further proceedings were brought for the removal under the general act and anticipated resistance made to removal. In the meantime, the county would continue to be without a court-house or proper accommodations for enforcing criminal laws and conducting litigation and county business; or if the county commissioners proceeded promptly to rebuild or provide a court-house at Dayton, and by completion an election was reached under the general act and the county-seat removed to Yerington, great and unnecessary expense might be entailed upon the taxpayers. As great an emergency may have existed for the passage of this special act as for the one moving the county-seat of White Pine County to Ely after the destruction of the court-house at Hamilton.

Considering the conditions which may have prompted

this special act of the legislature, and the fact that it and other special acts have been pased by the legislature after decisions of this court sustaining the removal of county-seats under similar special acts, it is apparent that even stronger reasons now exist for sustaining this legislation, and to hold it invalld might result in the raising of grave questions concerning the removal of other county-seats and cause uncertainty regarding records and judgments involving large interests.

The judgment of the district court is affirmed.