## THE MAYOR AND BOARD OF ALDERMEN OF THE CITY OF VIRGINIA, APPELLANTS, v. THE CHOL-LAR-POTOSI GOLD AND SILVER MINING CO., RESPONDENT.

Section 8, Article VIII, of the Constitution, requiring the Legislature to pass a general law for the organization of cities and towns is inoperative until acted upon by the Legislature.

Such sections, if standing alone, and not qualified by any other section of the Constitution, might raise a strong implied prohibition against the Legislature passing any special laws on the same subject.

Section 1, Article VIII, by much stronger implication, seems to reserve to the Legislature the power to pass special laws in regard to municipal corporations : that is, to create them ; or, at least, to confer special and additional powers after they are in existence.

The City of Virginia was a municipal corporation when the Constitution was adopted, and has never ceased to be a corporation.

The law amending the charter is, therefore, constitutional.

The products of mines are personal property, and as such subject to taxation for municipal purposes.

All property within the municipality is subject to one annual taxation, and it makes no difference that it is removed beyond the corporate limits before the amount of tax is specified; or the mode of collecting established.

The Constitution requires that all *ad valorem* taxes shall be as nearly equal as may be. We cannot see that the mode of assessing the products of mines violates that principle of equality.

The municipal authorities of the City of Virginia may add a penalty for refusing to give the Assessor proper information to enable him properly to assess the products of a mine.

APPEAL from the District Court of the First Judicial District, the Hon. R. S. MESICK, presiding.

The facts are stated in the opinion.

*Clark Churchill* and *McRae & Rhodes*, for Appellants.

The power of the Legislature over the subject of taxation is unlimited (Blackwell on Tax Title, pp. 8 & 9). So the mode of assessing rests with the Legislature. *People* v. *Mayor of Brooklyn*, 4

Comstock, 420, 425–6 ; *Burnett* v. *Mayor of Sacramento*, 12 Cal. 76 ; *Blanding* v. *Burr*, 13 Cal. 343–351 ; *People* v. *Seymour*, 16 Cal. 332 ; *People* v. *Holiday*, 25 Cal. 300.

There is no constitutional objection to passing tax laws which are retroactive. The only objection to such laws is one of policy.

See *Von Schmidt* v. *Huntingdon*, 1 Cal. 65· ; *Thorne* v. *City of San Francisco*, 4 Cal. 127.

The same doctrine is held in New York, *Jones et al.* v. *Still et al.* 9 Barb. 482. See Abbott's Digest, 5 Vol. p. 81, Secs. 57–66 incl. So in the Courts of the United States. See *Calder et Ux.* v. *Bull et Ux.*, 3 Dall. 386 ; 1 Cond. 172. See also *Providence Bank* v. *Billings et al.* 4 Pet. 514, Charles River Bridge Case, *Hart* v. *Lampleire*, 3 Pet. 289 ; *President Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420.

*Hillyer & Whitman*, for Respondents, made the following points :

1. The City of Virginia has no existence, the charter being unconstitutional. Constitution of Nevada, Art. 8, Sec. 8.

2. The ordinance was made without authority. Constitution of Nevada, Art. 10, Revenue Act, Stat. Nev. 1864–5, pp. 271, 315 ; Charter City Virg. Stat. Nev. 1864–5, pp. 209, 218.

3. It is retroactive, and therefore unconstitutional. Sedgwick on Stat. and Const. Law, pp. 188, 189, 190 ; Smith's Commentaries on Statutory and Constitutional Construction, p. 306, sec. 169.

4. It attempts to tax property belonging to a citizen of another State when the property is not within the State. This cannot be done. *State of Nevada* v. *John O. Earl et al.*, Supreme Court, Nevada ; Rev. Act, Nevada Stat. 1864-5. To the point of citizenship, see *Ohio & Mississippi R. Co.* v. *Wheeler*, 1 Black, 286, and cases there cited.

5. The ordinance attempts to assess by legislation. Such assessment is void. *Ferris* v. *Coover*, 10 Cal. 632–3 ; Charter City Virg. Nev. Stat. 1864–5. See Bouv. Title Assess—Assessor.

6. If the power to levy a tax was in the plaintiff, yet there was no power in it to attach the extraordinary penalties. The city possesses no powers except those expressly granted by Statute, or such

as are necessary to carry such powers into effect.   *Lowe* v.  *City of Marysville*, 5  Cal. 214 ;  *Hodges*  v.  *City of Buffalo*, 2 Denio, 112 ;  *Douglas* v.  *Mayor of Placerville*, 18 Cal. 647,  and  cases there cited.

Opinion by BEATTY, J.

This was a suit brought for the collection of municipal  taxes alleged to be due from the defendant to the city of Virginia for taxes on the products of a mine.

Virginia was a city existing under Territorial law when the Constitution was adopted.   In March, 1865, the State Legislature passed a law, re-chartering the city, and repealing the former law, granting a charter, so far as it was inconsistent with the new Act of Incorporation.   Section 17 of the Act of March, 1865, empowers the Board of Aldermen " To levy and  collect taxes on all property within the city, both real and  personal, made taxable by law, for State or county purposes."   Section 20 of the same Act authorizes the Board to provide by ordinance, the manner of assessing and collecting taxes.

The first election under the new charter took place the first Monday in May.   The new officers qualified the second Monday of May.   The Board of Aldermen in the month of September following, passed an ordinance prescribing the mode of assessing and collecting taxes.

That ordinance provided for a quarterly assessment and payment of the tax on the proceeds of the mines ; the first quarter to commence the last Monday of May, and end the last Monday of August, 1865.   The ordinance in prescribing the manner of assessing the taxes on the proceeds of mines follows the same course prescribed by the State Legislature for assessing them for State purposes.   That is in substance, to ascertain the amount and yield of ores from each mine, for one quarter, to deduct from the gross yield first twenty dollars per ton ; then to deduct from the remainder one-fourth, or twenty-five per cent., and to assess the remaining three-fourths at the same ad valorem tax as other property.   The complaint sets out all the foregoing facts, and many other facts to which it is not now necessary to allude, as the contested points in the case will be explained by the foregoing statement and such

additional facts as we will be obliged to allude to in the course of this opinion.

The Court below sustained a demurrer to the complaint, and entered judgment for defendants, and the plaintiff appeals to this Court from the judgment rendered by the Court below.

We will follow the counsel of respondent in noticing the different grounds on which they claim the judgment must be sustained.

First, it is claimed that the city of Virginia is not a corporation, and its Aldermen have no municipal powers for the reason that the law of March, 1865, granting the new charter, is void, because it is in conflict with Constitutional provisions.　Section 8, article 8, of the Constitution is in these words : " The Legislature shall provide for the organization of cities and towns by general laws ; and restrict the powers of taxation, assessment, borrowing money, contracting debts and loaning their credit, except for procuring supplies of water."

Here is a requirement of the Legislature to do a certain thing, to pass a general law on a certain subject.　This provision of the Constitution remains inoperative until the Legislature performs its duty ; at least it remains inoperative so far as any positive effect is to be given to it.　But it may be contended that it has a negative effect — that it raises an implied prohibition against the Legislature passing any *special law* for organizing cities or towns.　Although there are no negative terms in the clause, if it stood alone and was not qualified by any other clause, we would certainly be inclined to hold that such was the intention and effect of the section.　Otherwise it would be useless, for if the Legislature first passes a general law, and then goes on to pass a special law, organizing each new town or city as it comes into existence, the general law would be a dead letter in the Statute Book.　Doubtless the framers of the Constitution intended that section of the organic law to have some beneficial effect.　But there is another section of the Constitution, *to wit :* section 1, of article 8, which we think settles this question. That section reads as follows : " The Legislature shall pass no special act in any manner relating to corporate powers, except for municipal purposes ; but corporations must be formed under general laws ; and all such laws may, from time to time, be altered or repealed.

7

The expression, " in any manner relating to corporate pow-
ers," is a rather ambiguous phrase, but we think the framers of the
Constitution meant by that language to prohibit the *formation of
corporations by special acts.* The subsequent language, " but
incorporations may be formed under general laws," shows that was
the meaning intended to be conveyed. Then, to use more appro-
priate language, the section would read in this way : " The Legis-
lature shall pass general laws for the formation of corporations ;
but no corporation (except corporations for municipal purposes)
shall be created by special act."

This, we think, is what the Constitution meant to express.

Is there not here positive implication that the Legislature may
create municipal corporations, much stronger than the negative im-
plication in section eight, that they shall not ? Besides, the power
to create municipal corporations is one usually exercised by State
Legislatures, and we ought not to infer that the Legislature of this
State was inhibited from the exercise of such power, unless the
Constitution is reasonably clear on the point.

But there is another view to take of this power. It may be that
the Convention intended by section eight to provide that all new
towns and cities should be *organized* under a general law. After
they were once organized, if their size, circumstances, and necessities
required more extensive, or more restricted limitations upon the
municipal officers than those conferred by the general law, the
Legislature might apply the remedy by special act. If such was
the intention, we think the new charter was framed strictly in ac-
cordance with the idea. Virginia was a chartered city when the
Constitution was adopted ; it was already organized as a municipal
government. It has never ceased to be such. The new charter
is, in effect, but an amendment of the old one. If the Legislature
could pass any special law in respect to municipal corporations,
(and of that we have no doubt) we think there is no constitutional
objection to this one.

The Act creating the new charter expressly authorizes the Board
of Aldermen to provide for the levy, assessment, and collection of
a tax on all property, real and personal, in the city, which is sub-
ject to taxation for State and county purposes.

Admitting the City of Virginia to be a legally constituted cor-

The City of Virginia *v.* The Chollar-Potosi G. and S. M. Co.

poration, it is contended the corporate authorities had no power to levy this particular tax on the proceeds of the mines.

The corporation is authorized to tax " all the property, real and personal, in the city, which is subject to taxation for State and county purposes."

But, say respondents, these ores attempted to be taxed are not *real estate* in the nature of things, and not *personal estate* because the statute declares they are not.

The fifth section of the Revenue Act defines real and personal estate, and winds up with this proviso : " That gold and silver bearing ores, quartz, or minerals from which gold or silver is extracted, when in the hands of the producers thereof, shall not mean, nor be taken to mean, nor be listed and assessed under the term ' personal property,' as used in this section of this Act, but is specially excepted therefrom, and shall be listed, assessed, and taxed as hereinafter provided."

As we understand this proviso, it does not intend that ores which are the products of mines shall in no case be held or treated as personalty, but simply that such ores are not to be considered as included within the definition of personal property, as used in that section, and that they are not to be listed or taxed under the general provisions in regard to personal property, but under other and special provisions as to the product of mines.  We think the products of mines are personal property subject to taxation for State and county purposes, and also to municipal taxation, under the law conferring the taxing power on the corporate authorities of Virginia.  It is further objected, that this assessment was on property not in the city when the ordinance was passed for the assessment. The assessment was on property which was in the city after the passage of the law by the Legislature.

All property within a city or State, except that which is *in transitu*, is liable to one annual taxation.  The Act of the Legislature was sufficient authority for taxing all property within the city after the passage of that Act.  It made no difference when the ordinance was passed or the assessment made, if it were owned and held in the city at any time during the year after the law was passed, it was subject to taxation.  The duty to pay a tax on the property arose whilst the property was in the city.  It could make

no difference that it was removed from the city before the ordinance was passed prescribing the amount of tax to be paid, and the manner of assessing and collecting. There is no objection to making an Act so far retroactive as to enforce the performance of an existing duty. We do not think the position that the ordinance is void, because it attempts to assess by legislation, is tenable.

The tenth article of the Constitution provides: " The Legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal or possessory, except mines and mining claims, the proceeds of which alone shall be taxed."

The leading feature of this section is that the taxation shall be equal and uniform, and that the proceeds of the mines only shall be taxed. In other words, whilst the body of the mine remains untaxed, the ore taken out (for that is the primary proceeds of the mine) shall be subject to the same ad valorem taxation as other property. The mode of assessment prescribed by the Legislature, and followed by the city ordinance, was doubtless intended to arrive at the true value of the ore, and tax it at that value. It is evident when the ore is taken out of the mine it is not worth what it will yield; for if ore be taken out which, by working process, will only yield twenty dollars per ton, and it costs twenty dollars to haul it to a mill and have it worked, it is really worth nothing; hence it was very properly provided that in assessing ores, twenty dollars per ton should be taken from the actual yield of such ores, that being generally considered about the cost in the principal mining districts, of hauling ores to the mill and working them, at the time the law was passed. In addition to the deduction of twenty dollars per ton, there is a deduction of twenty-five per cent. from the remainder. Why this latter deduction was made it would be hard to say, but this is not injurious to those who pay taxes on the proceeds of mines, and they have no right to complain. There ought to be some settled mode of ascertaining the value of ores or the proceeds of mines. The Legislature is the body to prescribe that method. If there is nothing in the manner prescribed grossly unjust and in violation of that principle of equality prescribed in the Constitution, this Court would not interfere with their action.

Absolute equality in assessments is known to be impossible. We do not see anything in the mode prescribed by the Legislature, and followed by the ordinance, which so far violates the principles prescribed in the Constitution as to authorize us to say the spirit of that instrument has been disregarded. The fixing of a valuation of five hundred dollars per ton on all ores, when the owners or managers of mines refuse to furnish the means of making a more correct assessment, is apparently a rather harsh rule, but there is no difficulty in avoiding such assessments. If a party willfully refuse information, it is but a just penalty for neglecting to perform a plain duty ; in such case they can only blame themselves.

As the Board are authorized to prescribe by ordinance the method of enforcing payment of these taxes, we see no reason why they may not add a penalty for not paying the taxes when demanded, which shall compensate the city or its attorney for the trouble and delay of enforcing the collection. The judgment is reversed. The Court below will reinstate this cause on the calendar, overrule the demurrer, allow the defendant to answer if it chooses to do so, and proceed with the trial of the cause.