Helm, J.,
The only ground of demurrer demanding our attention, is the radical one, that the facts stated in the answer are not sufficient to constitute a defense; and it reaches both divisions of the answer.
But defendant insists upon the application of the familiar rule, that a demurrer alleging the above ground reaches back and assails the first defective pleading. This presents, as the first subject for consideration, the sufficiency of the complaint. The allegations of the complaint being attacked by demurrer, are, of course, admitted to be true.
It is challenged on the ground that plaintiff is not entitled to relief in a court of equity.
The doctrine may be considered established, that where taxes are a personal charge, courts of equity are exceedingly loth to interfere for the purpose of restraining their collection, and ordinarily refuse to do so. Cooley on Taxation, p. 538, et seq., and cases cited; High on Injunctions, Sec. 354.
But when irreparable injury is threatened, where the element of fraud exists, or where there is some other circumstances attending the injury distinguishing it from a mere trespass, relief by injunction may be successfully invoked. High on Injunctions, Sec. 354, and cases cited, also Sec. 359; Cooley on Taxation, p. 547, also 538, et seq., and cases cited; Osborne v. Bank of United States, 9 Wheaton, 738.
The Courts of Illinois go farther and hold that equity has ample power to restrain the collection of taxes where the assessment or levy has been made without legal authority, or is otherwise illegal and void. National Bank of Hiawnee Town v. Cook et al., 77 Ill., 622; Viely v. Thompson et al., 44 Ill., 9; Drake v. Phillips et al., 40 Ill., 388.
*83 And a few of the other States recognize substantially the same doctrine.
In the case at bar, irreparable injury is clearly alleged; the flooding of the drifts and shafts of the plaintiff’s4mine with water, and the caving in and destruction thereof, are among the injuries shown to be legitimate and necessary result of defendant’s alleged wrongful levy and sale. The extent of such injuries and the damages resulting therefrom, it is and will be impossible to calculate, and it cannot be said that plaintiff has an adequate remedy at law. See Kerr on Injunctions, pages 199 and 200.
But the complaint further alleges that the sworn assessment schedule returned by plaintiff’s agent was falsely, fraudulently and without notice to plaintiff, altered by the addition thereto as “net output” of $ 1,500,000; and that the discovery of such false and fraudulent alterations in its assessment was not made by plaintiff till subsequent to the adjournment of the county commissioners sitting as a board of equalization.
My conclusion is, that this case comes within two or more of the established exceptions to the doctrine that equity will not interfere by injunction where the tax complained of is a personal charge. I am assuming that the net proceeds of mines are personal property. City of Virginia v. Cholar Potosi M. Co., 2 Nev., 91.
In so far, then, as it affects the complaint, the demurrer is overruled.
Turning our attention to the answer, two questions may be considered as fairly presented by the demurrer:
First, are the denials in the first subdivision of the answer sufficient to make issues upon the material allegations of the complaint; and secondly, are the facts stated in the defense, counter claim or cross complaint, which compose the second subdivision, sufficient to justify the assessment and levy complained of. Or to state the latter question more clearly, can the net preceeds of mines in this State be taxed under the present statutes ?
Every denial in the answer (and it contains over forty denials) is upon either information or belief; in four or five instances the issues are made by alleging that defendant has not and cannot obtain sufficient knowledge or information upon which to base a belief. Under our system of practice these methods of making issues are proper. But they can only be used where one has *84 not necessarily or presumptively personal knowledge upon the particular matter controverted. To deny upon information or belief a matter of which one must ordinarily be presumed to have positive personal knowledge, would be objectionable pleading.
“Where the alleged fact is presumptively within the personal knowledge of defendant, he cannot be permitted to answer upon information and belief, but must answer in the form positive.” Bliss on Code Pleading, No. 326; Humphreys v. McCall, 9 Cal., 59; See also Shry’s Equity Pl., Sec. 855.
Neither in such case is one permitted to make the issue by alleging that he has not and cannot obtain sufficient knowledge or information upon which to base a belief. Civil Code of Procedure, No. 57.
“The statute imposes upon the defendant the duty of acquiring the requisite knowledge or information to enable him to answer in the proper form.” San Francisco Gas Company v. the City, 9 Cal., 453.
The learned judge in this case (Justice Field) intends, of course, that the above declaration should be taken with the qualification, “if the means for obtaining such knowledge or information are reasonably within reach of the pleader.”
Among other denials by defendant in the answer on belief, are the following:
“That he has refused to permit any use by said plaintiff of all its machinery and property. * * * That defendant will seize all timbers and other property. * * * That he advertised for sale and would have sold plaintiff’s property. * * * That he has threatened to re-distrain or re-levy upon the same property.”
As to these and similar denials of matters presumptively within defendant’s knowledge, in the answer, which controvert material allegations of the complaint, the demurrer is sustained.
The good-natured suggestion by defendant, on belief, that if plaintiff is damaged by the levy, it would better pay its taxes; also on belief, that defendant has not done more than his duty in the premises, are at most immaterial or redundant matter, to be reached by motion and not by demurrer.
The remaining and most important question presented upon this demurrer is, as above stated, briefly: Can taxes be levied *85 and collected at present upon the net proceeds of mines in this State ?
The tax schedule attached to the pleadings as an exhibit contains the expression “net output,” instead of the words “net proceeds,” used in the constitution and statute. This is, of course, an error, for the meaning of the two expressions is widely different. The net output (if there can be a net output as distinguished from the gross output) of a given mine during a tax year may be worth half a million dollars, while the net proceeds thereof may be less than nothing. But the evident intention was to list the net proceeds, and I will assume that these words were used.
There can be no doubt but that the net proceeds of mines in this State are subject to taxation; they are in this respect precisely upon a par with other kinds of taxable property. Constitution, Article 10, Sec. 3; Gen. Laws, Sec. 2244.
And it is not in the power of the General Assembly to pass a law that shall exempt them from taxation. Constitution, Article 10, Sec. 6.
But to give vitality to this provison there must be some method provided in the constitution or statutes for the listing or assessment of this species of property, and for levying and collecting the taxes thereon; and we are led to consider, first, whether or not this constitutional provision is self-enforcing; and secondly, whether if it be not self-enforcing, the Legislature have provided any machinery for making the provision operative.
The language of the constitution is as follows: “All taxes shall be uniform * * * and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation. * * Provided that mines and mining claims bearing gold, silver and other precious metals (except the net proceeds and the surface improvements thereof) shall be exempt from taxation. * *”
There is nothing in this section nor in any other constitutional provision which indicates how this or any other species of property shall be listed or assessed for taxation, or how the tax shall be levied or collected thereon. On the contrary, it expressly says that these things shall be done by “general laws, which shall prescribe such regulations” as may be necessary to “secure a *86 just valuation of all property.” It cannot be claimed that the constitution is self-enforcing on this subject. If it is self-enforcing as to the net proceeds of mines, it is also self-enforcing as to all other species of property; and our revenue act contains a large number of sections that are superfluous and might be expunged.
If this provision is not self-enforcing as to the-net proceeds of mines, what machinery has the Legislature provided to meet the emergency?
There is certainly nothing in the statutes distinguishing this, so far as the assessment, levy and collection of taxes thereon are concerned, from other species of property. The statute simply re-enacts the constitutional provision, and goes no further. If, then, taxes can be collected, at present, on the net proceeds of mines, the assessment must be made and the taxes must be levied and collected under and by virtue of the general provisions on these subjects in the revenue act.
That act provides that ‘‘all personal property shall be listed in the county where it shall be on the first day of May of the then current year.” General Laws, Sec. 2248.
The proceeds of a mine are accruing from day to day during the year. From time to time, if there be an excess after deducting expenses, that excess is paid over to the owners, or to stockholders, as dividends; the net proceeds, if the mine be fortunate enough to have any, are almost always disbursed and distributed as rapidly as they accrue, so that on the first day of May, or on any other given day, the net proceeds in a particular county would be but a small fraction of the aggregate net proceeds for the year previous. It needs no argument or illustration to demonstrate that the assessment of the net proceeds of mines under this section would be a farce. Of the small proportion that would otherwise be on hand in a given county on the first day of May, how much would be there on the succeeding anniversaries of that day, after the first successful attempt to assess the mining proceeds of such county under the above provision? I am not sure but that the attempt to apply this section to the proceeds of mines would be obnoxious to the constitution. For the statute would then practically amount to an exemption law. See State v. Kruttschnitt, 4 Nev., 200.
*87 The framers of the constitution seemed to have intended that the entire net proceeds of mines should be taxed, instead of the mines themselves. They certainly did not contemplate taxing the small proportion of such proceeds remaining in the county on any given day of the year.
In the argument, weight was given by defendant’s counsel to the fact that the Legislature has provided for the assessment of the average value of stocks of merchandise. But it will not do for us to infer from this that they intended to assess in the same way the aggregate net proceeds of mines. If such had been their intention they would certainly have expressed it in unequivocal language. There is no analogy between the two. If the law provided for the exemption of the merchandise, and the taxing of the aggregate income from the sale thereof, there would be some similarity; then, if it provided the means for collecting such tax, there would, perhaps, be a little plausibility in the argument that it was the intention to include under the same provisions the assessment and collection of the tax on mining proceeds. Under well established principles on the subject of taxation we are precluded from the presumption that the merchandise or manufacturing clauses of the revenue act have any reference to mines or the income therefrom. ' The law does not require the keeping of any record showing the amount of receipts and disbursements in connection with the working or operating of mines; nor does it give the assessor access to the books or records which the operators themselves may choose to keep; neither is there any other requirement whereby the aggregate net proceeds thereof can be satisfactorily determined. Of course it is not my province here to speculate upon the difficulties attending an equitnble solution of this legislative problem; such as the fact that this would be substantially an income tax; a kind of tax not exacted, I believe, from any other industry in the State. And that the aggregate net proceeds of a given mine during the previous fiscal year may have been a quarter of a million of dollars, while for the coming fiscal year (for which the assessment is made) they might be less than one hundred.
In Nevada, under a similar constitutional section, it was deemed necessary by the Legislature to enact a lengthy series of provisions to govern the assessment of this species of property. State v. Kruttschnitt, 4 Nev., 210.
*88 By a consideration of the foregoing and other Nevada decisions on the subject, the impossibility of listing for taxation the net proceeds of mines without careful, ingenious and minute legislation, as to the method to be pursued and the means invoked, will appear much more clearly than it could be made to by any feeble language of mine.
For the foregoing and other reasons, which will readily occur to any one, I conclude that there is a want of the necessary appliances or machinery in the statutes to make the constitutional provision operative. The general assembly either intended that this species of property should not be subject to taxation at present, or failed to voice effectually their pleasure on the subject. The demurrer to the second count in the answer must be sustained.
During the argument some attention was given to the alleged fact that the assessor made the change complained of, and gave plaintiff no notice thereof. I only refer to this now for the purpose of calling attention to what I deem a serious defect in the law.
Under Secs. 2267 and 2273 of the general laws, the assessor clearly has the authority to add to the list or schedule returned by the tax payer on any property which he thinks has been omitted, either through inadvertance or fraud, but he is not required to give any notice whatever to the person whose schedule he so changes. Neither are the county commissioners, sitting as a board of equalization, should they discover the changes, required to give him any notice thereof. The first intimation that the tax payer has of the increase in the amount of the property on which he is assessed, may be when he appears in the treasurer’s office for the purpose of paying his taxes, and long after the board of equalization have adjourned. In Illinois the objection is cured by the statute; there the assessor must give notice to the property owner of all such changes. Cleghom v. Postlethwaite et al., 43 Ill., 430.
But a person aggrieved in this way can be heard to complain in the Courts, even though no such provision is given by statute; for “An opportunity of a hearing of some description is a matter of constitutional right.” Cooley on Taxation, page 226, and cases there cited.