OPINION
 

 Per Curiam:
 

 This is an appeal from a judgment finding a petition filed by a citizens group seeking to recall a member of the Board of Regents legally insufficient and an order directing the Registrar of Voters
 
 *1297
 
 to take no further action on the recall petition. There is also a cross appeal from an order of the district court denying the subject of the recall effort his request for costs.
 
 [1]
 

 FACTS
 

 Appellants “The Citizens to Recall Carolyn M. Sparks” (hereinafter “the Citizens”) organized a petition drive to recall respondent Carolyn M. Sparks (“Sparks”) from her position as a University of Nevada Regent. The following events are relevant to the resolution of this appeal: (1) on November 2, 1992, the Citizens, pursuant to NRS 306.015, filed the notice of intent to circulate a petition to recall Sparks; (2) on November 3, 1992, a general election was held, at which time 90,881 registered voters cast ballots in the geographical area comprising University Regent Section 2, Subdistrict B (Sparks’ district); and (3) on December 31, 1992, the Citizens submitted the recall petition to the Clark County Registrar of Voters, which, according to the district court’s judgment, contained 12,887 valid signatures.
 

 On January 22, 1993, the Clark County Registrar of Voters, represented by the Clark County District Attorney’s Office, filed a petition for a hearing to determine the sufficiency of the recall petition. At the time, NRS 306.040 required the Registrar to automatically submit the matter to the district court for a sufficiency hearing. After an evidentiary hearing, the district court, having first announced its ruling in open court, filed its findings of fact, conclusions of law and judgment on February 19, 1993.
 

 The lower court determined that the organizers of the recall drive had relied upon the erroneous advice of the assistant registrar of voters indicating that 10,301 signatures were essential for the presentation of a valid petition. This figure was based upon twenty-five percent of the vote for the specific office of Regent in the 1990 election. However, the district court determined that Article 2, section 9, of the Nevada Constitution provided that twenty-five percent of the votes cast in the relevant geographical area (the district that elected the officer) in the general election preceding the filing of the petition constituted the requisite number of signatures to be included in the recall petition. Utilizing the vote tallies from the November 3, 1992 election, the district court found that under the constitutional formula, 22,720 signatures were necessary to a valid petition for Sparks’ recall.
 
 *1298
 
 Although other issues regarding the sufficiency of the recall petition had been raised,
 
 [2]
 
 the court ultimately ruled that based on the deficient number of signatures, the recall petition was legally insufficient.
 
 [3]
 
 Accordingly, the court directed the Registrar of Voters to take no further action regarding the recall petition.
 

 Based upon the district court’s ruling, Sparks sought to recover the legal costs incurred in her successful attempt to contest the sufficiency of the petition. Relying on NRS 18.020(4),
 
 [4]
 
 Sparks contended that the sufficiency hearing was a special proceeding and that she was entitled to an order requiring the losing party to pay her legal costs as the prevailing party. Appellants countered that such an order would, in effect, constitute a tax on the exercise of the constitutional right to recall elected officials and would have a chilling effect on future individuals legitimately seeking to improve their government. The court eventually granted appellants’ motion to retax or strike Sparks’ memorandum of costs.
 

 The Citizens appeal on the legal questions of (1) whether the court applied the proper election in determining the number of required signatures and (2) whether they were reasonably entitled to rely upon the advice received by the Registrar as to the required number of signatures. Sparks filed a cross appeal from the district court’s order granting the motion to retax or strike her memorandum of costs.
 

 DISCUSSION
 

 The Citizens contend that the district court selected the wrong
 
 *1299
 
 election as the determinant of the minimum number of signatures required for their recall petition. They insist that the proper election to be referenced was the general election preceding their filing of notice of intent to seek recall.
 

 Article 2, section 9, of the Nevada Constitution provides, in pertinent part:
 

 Sec. 9. Recall of public officers: Procedure and limitations. Every public officer in the State of Nevada is subject, as herein provided, to recall from office by the registered voters of the state, or of the county, district, or municipality, from which he was elected.
 
 For this purpose a number of registered voters not less than twenty-five per cent (25%) of the number who actually voted in the state or in the county, district, or municipality electing said officer, at the preceding general election, shall file their petition, in the manner herein provided, demanding his recall by the people-,
 
 they shall set forth in said petition, in not exceeding two hundred (200) words, the reasons why said recall is demanded. ... If he shall not resign within five (5) days after the petition is filed, a special election shall be ordered to be held within twenty days (20) after the issuance of the call therefor, in the state, or county, district, or municipality electing said officer, to determine whether the people will recall said officer.
 

 (Emphasis added.)
 

 We conclude that the district court correctly found this language unambiguous as it says nothing concerning the filing of the notice of intent to recall. According to the referenced constitutional provision, twenty-five percent of the persons who actually voted in the relevant political division in the preceding general election shall file their petition for recall. Thus, twenty-five percent of the persons who voted in the general election preceding
 
 the filing of the petition
 
 must sign the recall petition.
 

 The procedure for initiating and carrying out a recall petition is further specified by Chapter 306 of the Nevada Revised Statutes, and it is upon this Chapter that the Citizens claim support for their position. NRS 306.015 provides for the filing of a notice of intent to circulate a recall petition. NRS 306.015(2) mandates that this notice:
 

 (a) Must be signed by three registered voters who actually voted in the state or in the county, district or municipality electing the officer at the last preceding general election.
 

 (b) Must be signed before a person authorized by law to administer oaths that the statements and signatures contained in the notice are true. . . .
 

 
 *1300
 
 NRS 306.015(3) requires the petition to be submitted within sixty days of the filing of the notice.
 

 NRS 306.015 does not require the notice to contain a statement of the number of signatures required to be on the petition; however, NRS 306.020(2)(b) specifies that the petition itself must contain a statement of the required number of signatures. The latter subsection of the statute provides:
 

 2. The petition must, in addition to setting forth the reason why the recall is demanded:
 

 (b) Contain a statement of the minimum number of signatures necessary to the validity of the petition[.]
 

 The Citizens allude to the impossible task of filing a notice less than 60 days prior to a general election and using the allotted 60 days to collect signatures (thus collecting signatures beyond the new election) in compliance with these statutes. They observe that no one can divine twenty-five percent of the persons “who actually voted” in a future election. Consequently, Citizens argue that it “must be” that the election preceding the filing of the notice is the relevant election for determining the required number of signatures.
 

 Citizens’ reasoning is contrary to general rules of statutory and constitutional construction, placing, as it does, greater interpretive eifect upon one section of a statute than upon the plain terms of the constitution. The constitution may not be construed according to a statute enacted pursuant thereto; rather, statutes must be construed consistent with the constitution and, where necessary, in a manner supportive of their constitutionality. As this court has previously stated:
 

 It should be noted at the outset that statutes should be construed, if reasonably possible, so as to be in harmony with the constitution. State of Nevada v. Glusman, 98 Nev. 412, 651 P.2d 639 (1982),
 
 appeal dismissed,
 
 459 U.S. 1192 (1983); Milchem Inc. v. District Court, 84 Nev. 541, 445 P.2d 148 (1968). To this extent, an act is presumed to be constitutional and will be upheld unless the violation of constitutional principles is clearly apparent. Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983); State of Nevada v. Glusman,
 
 above;
 
 Ottenheimer v. Real Estate Division, 97 Nev. 314, 629 P.2d 1203 (1981); County of Clark v. City of Las Vegas, 97 Nev. 260, 628 P.2d 1120 (1981).
 

 Sheriff v. Luqman, 101 Nev. 149, 154-55, 697 P.2d 107, 111 (1985). By contrast, an adoption of the Citizens’ position would
 
 *1301
 
 require the untenable ruling that constitutional provisions are to be interpreted so as to be in harmony with the statutes enacted pursuant thereto; or that the constitution is presumed to be legal and will be upheld unless in conflict with the provisions of a statute. This is contrary to the clear rules of statutory and constitutional construction.
 
 [5]
 

 For the reasons specified, we affirm the district court’s ruling and conclude that the plain and unambiguous language of the constitution is determinative of the issue of which election is relevant in calculating the required number of signatures on a recall petition: namely, the election immediately preceding the filing of the petition.
 

 Estoppel
 

 The Citizens also seek relief on grounds that they reasonably and detrimentally relied upon advice they received from the Registrar’s office concerning the number of signatures required for a valid recall petition. Accordingly, Citizens argue that the principle of equitable estoppel applies to require the Registrar (or the state) to accept their recall petition and go forward with the recall election. We reject Citizens’ argument.
 

 We consider the following reasoning of the Arizona Supreme Court to be persuasive:
 

 Elections are political matters to be decided by the electorate,
 
 but the legality of holding an election is a judicial question to be decided according to the requirements of the constitution. State v. Osborn,
 
 14 Ariz. 185, 125 R 884 (1912). . . .
 

 Preliminarily ... we are met by the claims of several of the real parties in interest, who are candidates certified to appear on the recall ballot, that it is not necessary for the
 
 *1302
 
 court to resolve the conflicting provisions of the state constitution applicable to this situation because the state is estopped from cancelling the election. The candidates contend that they, as well as many voters, justifiably relied to their detriment upon the Secretary of State’s order calling the special election and the Attorney General’s opinion stating that the election “shall be held even if the Governor later resigns or is removed from office prior to the election date.” Ariz. Atty. Gen. Op. 188-015 (January 21, 1988). . . .
 

 Ordinarily, a claim of equitable estoppel is made out when a person justifiably relies on the conduct of another to their detriment.
 
 Heltzel v. Mecham Pontiac,
 
 152 Ariz. 58, 730 P.2d 235 (1986). Generally, however,
 
 the defense of estoppel does not apply against the state in matters affecting governmental or sovereign functions. Mohave County v. Mohave-Kingman Estates,
 
 120 Ariz. 417, 586 P.2d 978 (1978).
 
 Nor may the state be estopped by the unauthorized acts of its officers or employees. Freightways, Inc. v. Arizona Corporation Commission,
 
 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981). . . .
 

 [W]e point out that
 
 the state is not estopped from cancelling an illegal election.
 
 The provisions of the constitution control in such matters, and although the candidates may have relied in good faith upon the Attorney General’s opinion, that opinion cannot negate the provisions of the constitution nor the authority of this court to interpret it.
 

 Green v. Osborne, 758 P.2d 138, 140-41 (Ariz. 1988) (emphasis added). Likewise, we reject the argument that equitable estoppel may apply to require the holding of an otherwise unconstitutional election.
 

 Moreover, it has been held that “[ejstoppel is an equitable doctrine[] [which] will not be applied against one who is blameless.” Ricciardi v. Los Angeles County, 252 P.2d 773, 779 (Cal. Ct. App. 1953). This principle has been utilized to prevent the application of equitable estoppel against the target of a recall petition who had nothing to do with erroneous advice given the recall organizers by a state official.
 
 See
 
 Wilcox v. Enstad, 176 Cal. Rptr. 560, 568-69 (Ct. App. 1981) (school trustee target of recall election could not be prevented under theory of equitable estoppel from seeking to compel county clerk to comply with law by recall petitioners’ asserted reliance on clerk’s earlier representations as to how law would operate). Similarly, we conclude that the registrar’s erroneous advice does not require the registrar (or
 
 *1303
 
 the state) to accept the Citizens’ recall petition and go forward with the recall election.
 

 Legal Costs
 

 In its findings of fact, conclusions of law and judgment, the district court ruled as follows:
 

 IT IS . . . ORDERED that a hearing on a recall petition is not a “special proceeding” within the contemplation of NRS 18.020(4), and therefore, no costs are awarded to Mr. Foley or Ms. Sparks under this statute; and
 

 IT IS FURTHER ORDERED that even if an award of costs was within this Court’s discretion, no costs would be awarded in this type of matter.
 

 Cross-appellant Sparks contests the district court’s denial of recovery of costs. She argues that the hearing on a recall petition is a “special proceeding” and consequently, that NRS 18.020(4)
 
 [6]
 
 mandates recovery of the prevailing party’s costs. We agree.
 

 NRS 18.020(l)-(3) and (5)
 
 [7]
 
 mandates an award of costs to the prevailing party in the “actions” specified therein, which are fairly all-encompassing, including actions concerning property and actions for money damages. NRS 18.020(4) provides for an award of costs to the prevailing party in any “special proceeding.” We have recognized this statute’s mandatory language dealing with “special proceedings.”
 
 See, e.g.,
 
 Day v. West Coast Holdings, Inc., 101 Nev. 260, 264, 699 P.2d 1067, 1070 (1985) (costs are mandatory to the prevailing party in an action falling
 
 *1304
 
 under NRS 18.020). Since Sparks ultimately prevailed against Citizens in their effort to effectuate her recall, the issue concerning her entitlement to costs involves a determination as to whether the proceedings against her fall within the purview of a “special proceeding.”
 
 [8]
 

 “It may be said generally that any proceeding in a court which was not under the common-law and equity practice, either an action at law or a suit in chancery, is a special proceeding.” Schmaling v. Johnston, 54 Nev. 293, 301, 13 P.2d 1111, 1113 (1932) (quoting In re Central Irrigation Dist., 49 P. 354, 356 (Cal. 1897))
 
 aff’d on rehearing,
 
 55 Nev. 164, 27 P.2d 1059 (1934). The following language from Avelar v. Superior Court, 9 Cal. Rptr. 2d 536 (Ct. App. 1992), albeit in a context other than costs, explains the term “special proceeding”:
 

 The difference between an action and a special proceeding, as defined by the statutes, is in the remedy sought. (See
 
 Agricultural Labor Relations Bd.
 
 v.
 
 Superior Court
 
 (1983) 149 Cal. App. 3d 709, 714, 196 Cal. Rptr. 920.) A “special proceeding is confined to
 
 the type of case
 
 which was not, under the common law or equity practice, either an action at law or a suit in equity.”
 
 (Tide Water Assoc. Oil Co. v. Superior Court
 
 (1955) 43 Cal. 2d 815, 822, 279 P.2d 35 [emph. supp.].) ....
 

 .... By describing a “special proceeding” as any remedy not available in an “action,” the Legislature must have meant to create and recognize two roughly equivalent levels of independent procedures to be directed towards the attainment of different, but similarly final remedies.
 

 Id.
 
 at 539-40.
 

 The hearing at issue was held pursuant to the former version of NRS 306.040,
 
 [9]
 
 which required the Registrar, upon the filing of a recall petition, to automatically submit the petition to the district court for a public hearing on the petition’s sufficiency. Nevertheless, Sparks and the organizers of the recall petition were deemed
 
 *1305
 
 the real parties in interest in the Registrar’s filing, and both parties hired attorneys to represent their divergent interests at the hearing. Because the mechanism (judicial hearing) for determining a recall petition’s sufficiency is strictly a creature of statute, underived from the panoply of remedies traditionally available in actions at law or suits in equity where one party has sued the other, we conclude that the proceeding was a special proceeding. Since Sparks prevailed in the proceedings below, we hold thát Sparks is entitled to her mandatory award of costs under NRS 18.020(4). (Foley is entitled to his costs under the same reasoning.) We thus reverse the lower court’s ruling as it relates to costs.
 

 In ruling as we have, we are not unmindful of the competing constitutional interests affected by this decision, i.e., the property interest held by the challenged elected official in the office to which he or she has been elected, and the right of individuals to legitimately seek recall of officials who are viewed as having failed in their public trust.
 
 See
 
 Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979); Brown v. Perkins, 706 F. Supp. 633, 634 (N.D. Ill. 1989). Under today’s ruling, it is apparent that accessing and asserting the referenced constitutional rights will ultimately redound to the financial detriment of the losing party.
 

 Despite our ruling, and in view of the potential problems and consequences that may result therefrom, we strongly invite the Legislature to address these issues. The legislative laboratory is well-suited to entertain the study, debate and public input necessary for a wise and fair resolution of the various ramifications and results of this decision. Of primary concern is the chilling effect the statutes, as interpreted here, may have on citizens legitimately trying to exercise their constitutional rights. Specifically, well-meaning citizens who fail in their attempt to exercise their constitutional right to recall an elected official are subject to an award of costs. Of perhaps equal concern is the chilling effect spurious recall efforts could have on the willingness of public officials to subject themselves to substantial cost awards in the event the recall effort is successful. In the latter case, public officials unendowed with an abundance of personal financial resources, could simply find the alternative of resignation more palatable than the prospect of a costly and perhaps unavailing defense. This alternative could have special attraction to a public official subjected to irresponsible, concentrated media efforts to promote the
 

 CONCLUSION
 

 For the reasons discussed above, we affirm the district court’s ruling that the general election immediately preceding the filing of the petition is relevant for determining the required number of
 
 *1306
 
 signatures on a recall petition. In addition, we reverse the district court’s ruling as to costs on the grounds that the statutorily mandated judicial hearing is a special proceeding which requires an award of costs to the prevailing party. Accordingly, both Sparks and Foley are entitled to their costs, and these matters are remanded to the district court for the limited purpose of determining the amount of the cost award to Sparks and Foley, respectively, and the entry of judgment thereon.
 

 [1]
 

 The Sparks case has been consolidated with another appeal and cross appeal involving an attempted recall petition (the Foley case). The appeal in the Foley case was dismissed by this court on January 6, 1994. However, the Foley cross appeal remained pending in the transmuted form of an appeal. The only remaining issue in the Foley (cross) appeal had to do with Foley’s request for costs; the same issue is present in the Sparks cross appeal. We therefore elected to address them together in this consolidated appeal.
 

 [2]
 

 For example, at the conclusion of the hearings, the district court announced that the petition sufficiently provided a basis for verifying the identity and residence of each of the signatories to the petition. In addition, the Findings of Fact, Conclusions of Law and Judgment incorporated the determination that there was “substantial compliance with the laws of the State of Nevada notwithstanding petitioners’ failure to consecutively number the pages of the petition.”
 

 [3]
 

 The petition to recall Foley, initiated on the same date as the Sparks petition, was likewise found by Judge Beko to contain an insufficient number of signatures. Judge Beko also concluded that the Foley petition was legally insufficient due to other deficiencies as well and that it would have contained an inadequate number of signatures even if the earlier election results had been utilized.
 

 [4]
 

 NRS 18.020 provides in pertinent part:
 

 Cases in which costs allowed prevailing party. Costs must be allowed of course to the prevailing party against any adverse party against whom judgment is rendered, in the following cases:
 

 4. In a special proceeding.
 

 [5]
 

 Our ruling is consistent with an Attorney General’s Opinion addressing the constitutional and statutory provisions at issue here. Specifically, an Opinion of the Attorney General explained that Article 2, Section 9, of the Nevada Constitution is “self-executing,” and, therefore, “to the extent that NRS 306.020, subsection 1 would conflict with the provisions of the constitution, Article 2, Section 9 [of the constitution] should be followed and not the provisions of NRS 306.020, subsection 1.” Op. Nev. Att’y Gen. No. 80-17 (May 21, 1980). Although the referenced opinion did not address the direct issue confronting us in the instant appeal, the Attorney General’s Opinion also stated that “the term ‘the preceding general election’ refers to the general election immediately preceding the filing of a recall petition.” Continuing, the opinion concludes that “filing officers must determine if a recall petition contains a number of signatures equal to 25 percent of the number of voters who voted at the immediately preceding general election.”
 

 [6]
 

 NRS 18.020 provides:
 

 Cases in which costs allowed prevailing party. Costs must be allowed of course to the prevailing party against any adverse party against whom judgment is rendered, in the following cases:
 

 1. In an action for the recovery of real property or a possessory right thereto.
 

 2. In an action to recover the possession of personal property, where the value of the property amounts to more than $2,500. The value must be determined by the jury, court or master by whom the action is tried.
 

 3. In an action for the recovery of money or damages, where the plaintiff seeks to recover more than $2,500.
 

 4. In a special proceeding.
 

 5. In an action which involves the title or boundaries of real estate, or the legality of any tax, impost, assessment, toll or municipal fine, including the costs accrued in the action if originally commenced in a justice’s court.
 

 [7]
 

 Id.
 

 [8]
 

 This court has determined that a pre-probate will contest is a special proceeding. Gavin v. Rhoden, 97 Nev. 147, 625 P.2d 571 (1981) (citing Wainwright v. Bartlett, 51 Nev. 170, 271 P. 689 (1928), in which a will contest was held to be a special proceeding). However, this court did not elucidate the defining characteristics of a special proceeding in these opinions.
 

 [9]
 

 The statute has since been amended to require a hearing on the sufficiency of the petition only when it is challenged by the filing of a complaint.
 
 See
 
 1993 Nev. Stat., ch. 576 § 7 at 2408-09.