130 Nev., Advance Opinion 52

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CHRISTOPHER THOMAS AND CHRISTOPHER CRAIG, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, Appellants, vs. NEVADA YELLOW CAB CORPORATION; NEVADA CHECKER CAB CORPORATION; AND NEVADA STAR CAB CORPORATION, Respondents. | No. 61681 **FILED** JUN 26 2014 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a district court order dismissing a complaint in a minimum wage matter. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Reversed and remanded.*

Leon Greenberg, a Professional Corporation, and Leon M. Greenberg, Las Vegas,
for Appellants.

Tamer B. Botros and Marc C. Gordon, Las Vegas,
for Respondents.

_____

BEFORE THE COURT EN BANC.

14-20951

*OPINION*

By the Court, CHERRY, J.:

Appellant taxicab drivers brought an action in the district court claiming damages for unpaid wages pursuant to Article 15, Section 16 of the Nevada Constitution, a constitutional amendment that revised Nevada's then-statutory minimum wage scheme (the Minimum Wage Amendment). The district court held that the Minimum Wage Amendment did not entirely replace the existing statutory minimum wage scheme under NRS 608.250, which in subsection 2 excepts taxicab drivers from its minimum wage provisions. We hold that the district court erred because the text of the Minimum Wage Amendment, by clearly setting out some exceptions to the minimum wage law and not others, supplants the exceptions listed in NRS 608.250(2). Accordingly, we reverse the district court's dismissal order and remand for further proceedings on appellants' minimum wage claims.

## FACTS AND PROCEDURAL HISTORY

Appellants Christopher Thomas and Christopher Craig brought a class action against respondent taxicab companies, arguing that they and similarly situated taxicab drivers had not been paid pursuant to constitutional minimum wage requirements during the course of their employment. The complaint was based on the Minimum Wage Amendment, which was proposed by initiative petition and approved and ratified by the voters in 2004 and 2006, and which raised the state minimum wage to a rate higher than the minimum imposed in Nevada by the Labor Commissioner under NRS 608.250. *See* Nev. Const. art. 15, § 16. The taxicab companies moved to dismiss the complaint pursuant to NRCP 12(b)(5), arguing that the Minimum Wage Amendment did not

 

eliminate the statutory exception for taxicab drivers under NRS 608.250(2)(e). Following a hearing, the district court concluded that the Minimum Wage Amendment did not repeal NRS 608.250 and that the statutory exceptions could be harmonized with the constitutional amendment. Accordingly, because NRS 608.250(2)(e) expressly excludes taxicab drivers from Nevada's minimum wage statutes, the district court granted the taxicab companies' motion to dismiss the complaint. Appellants now bring this appeal.

## DISCUSSION

An order granting an NRCP 12(b)(5) motion to dismiss "is subject to a rigorous standard of review on appeal." *Buzz Stew, L.L.C. v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008) (quotations omitted). "This court presumes all factual allegations in the complaint are true and draws all inferences in favor of the plaintiff. . . . We review all legal conclusions de novo." *Stubbs v. Strickland*, 129 Nev. ___, ___, 297 P.3d 326, 329 (2013).

The issue on appeal is a purely legal one: Does the Minimum Wage Amendment to the Nevada Constitution, Article 15, Section 16, override the exception for taxicab drivers provided in Nevada's minimum wage statute, NRS 608.250(2)(e)? The Amendment imposes a mandatory minimum wage pertaining to all employees, who are defined for purposes of the Amendment as any persons who are employed by an employer, except for those employees under the age of 18, employees employed by nonprofits for after-school or summer work, and trainees working for no

longer than 90 days. Nev. Const. art. 15, § 16(C).[1] In contrast, NRS 608.250(2), which was enacted prior to the Minimum Wage Amendment, excludes six classes of employees from its minimum wage mandate, including taxicab drivers. Appellants, as taxicab drivers excluded from coverage by NRS 608.250, base their claim for relief on the Minimum Wage Amendment. Respondents, however, argue that the Minimum Wage Amendment merely raised the amount of the wage and that it did not replace Nevada's statutory exceptions to the wage requirements.

It is fundamental to our federal, constitutional system of government that a state legislature "has not the power to enact any law conflicting with the federal constitution, the laws of congress, or the constitution of its particular State." *State v. Rhodes*, 3 Nev. 240, 250

---

[1]Nevada Constitution, Article 15, Section 16 reads, in relevant part:

**Payment of minimum compensation to employees.**

A. Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section.

. . . .

C. As used in this section, "employee" means any person who is employed by an employer as defined herein but does not include an employee who is under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period not longer than ninety (90) days. "Employer" means any individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity that may employ individuals or enter into contracts of employment.

(1867). "The Nevada Constitution is the 'supreme law of the state,' which 'control[s] over any conflicting statutory provisions.'" *Clean Water Coal. v. The M Resort, L.L.C.*, 127 Nev. ___, ___, 255 P.3d 247, 253 (2011) (alteration in original) (quoting *Goldman v. Bryan*, 106 Nev. 30, 37, 787 P.2d 372, 377 (1990)). We will construe statutes, "if reasonably possible, so as to be in harmony with the constitution." *State v. Glusman*, 98 Nev. 412, 419, 651 P.2d 639, 644 (1982). But when a statute "is irreconcilably repugnant" to a constitutional amendment, the statute is deemed to have been impliedly repealed by the amendment. *Mengelkamp v. List*, 88 Nev. 542, 545-46, 501 P.2d 1032, 1034 (1972). The presumption is against implied repeal unless the enactment conflicts with existing law to the extent that both cannot logically coexist. *See W. Realty Co. v. City of Reno*, 63 Nev. 330, 344, 172 P.2d 158, 165 (1946).

Respondents urge us to reconcile the Minimum Wage Amendment with NRS 608.250(2) by reading the Amendment as supplementing the statutory scheme, increasing the wage within the scheme but not adjusting the scheme as a whole. The district court likewise found that there was no explicit conflict between the statutory exceptions and the Minimum Wage Amendment's definition of "employee" and, therefore, that the Minimum Wage Amendment did not impliedly repeal the NRS 608.250(2) exceptions.

In our view, the district court's and respondents' reading of the Minimum Wage Amendment as allowing the Legislature to provide for additional exceptions to Nevada's constitutional minimum wage disregards the canon of construction "'expressio unius est exclusio alterius,' the expression of one thing is the exclusion of another." *Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967). The

SUPREME COURT
OF
NEVADA

(O) 1947A

5

Minimum Wage Amendment expressly and broadly defines employee, exempting only certain groups: "'employee' means any person who is employed [by an individual or entity that may employ individuals or enter into contracts of employment] but does not include an employee who is under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period not longer than ninety (90) days." Nev. Const. art. 15, § 16(C). Following the *expressio unius* canon, the text necessarily implies that all employees not exempted by the Amendment, including taxicab drivers, must be paid the minimum wage set out in the Amendment. The Amendment's broad definition of employee and very specific exemptions necessarily and directly conflict with the legislative exception for taxicab drivers established by NRS 608.250(2)(e).[2] Therefore, the two are "irreconcilably repugnant," *Mengelkamp*, 88 Nev. at 546, 501 P.2d at 1034, such that "both cannot stand," *W. Realty Co.*, 63 Nev. at 344, 172 P.2d at 165, and the statute is impliedly repealed by the constitutional amendment.

---

[2]Nevada's Attorney General reached the same conclusion in 2005:

> [T]he people, by acting to amend the minimum wage coverage and failing to include the statutory exclusions in the proposed amendment, are presumed to have intended the repeal of the existing exclusions so that the new minimum wage would be paid to all who meet its definition of "employee." Accordingly, the proposed amendment would effect an implied repeal of the exclusions from minimum wage coverage at NRS 608.250(2).

05-04 Op. Att'y Gen. 12, 18 (2005).

An alternative construction that would attempt to make the Minimum Wage Amendment compatible with NRS 608.250, despite the plain language of the Amendment, would run afoul of the principle of constitutional supremacy. A "constitutional amendment, adopted subsequent to the enactment of the statute relied on by counsel for petitioner, is controlling" over the statute that addresses the same issue. *State v. Hallock*, 16 Nev. 373, 378 (1882). Statutes are construed to accord with constitutions, not vice versa. *Foley v. Kennedy*, 110 Nev. 1295, 1300, 885 P.2d 583, 586 (1994). "Accepting respondents' position 'would require the untenable ruling that constitutional provisions are to be interpreted so as to be in harmony with the statutes enacted pursuant thereto; or that the constitution is presumed to be legal and will be upheld unless in conflict with the provisions of a statute.'" *Strickland v. Waymire*, 126 Nev. ___, ___, 235 P.3d 605, 613 (2010) (quoting *Foley*, 110 Nev. at 1300-01, 885 P.2d at 586). If the Legislature could change the Constitution by ordinary enactment, "no longer would the Constitution be 'superior paramount law, unchangeable by ordinary means.' It would be 'on a level with ordinary legislative acts, and, like other acts, . . . alterable when the legislature shall please to alter it.'" *City of Boerne v. Flores*, 521 U.S. 507, 529 (1997) (alteration in original) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). In this case, the principle of constitutional supremacy prevents the Nevada Legislature from creating exceptions to the rights and privileges protected by Nevada's Constitution.

Respondents also argue that, despite the intent expressed by the text of the Amendment, the voters actually intended to merely raise the minimum wage, not to create a new minimum wage scheme. But respondents do not adequately explain their basis for deriving such intent.

It would be impossible, for instance, to identify and query every Nevadan who voted in favor of the provision—and it is not even clear that such a survey would reveal the true intentions of those voters.

Moreover, our recent precedents have established that we consider first and foremost the original public understanding of constitutional provisions, not some abstract purpose underlying them. "The goal of constitutional interpretation is 'to determine the public understanding of a legal text' leading up to and 'in the period after its enactment or ratification.'" *Waymire*, 126 Nev. at ___, 235 P.3d at 608-09 (quoting 6 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 23.32 (4th ed. 2008 & Supp. 2010)). To seek the intent of the provision's drafters or to attempt to aggregate the intentions of Nevada's voters into some abstract general purpose underlying the Amendment, contrary to the intent expressed by the provision's clear textual meaning, is not the proper way to perform constitutional interpretation. *See generally District of Columbia v. Heller*, 554 U.S. 570 (2008) (interpreting the Second Amendment by seeking the original public understanding of the text, with majority and dissent disagreeing on content of public understanding). "The issue ought to be not what the legislature," or, in this case, the voting public, "meant to say, but what it succeeded in saying." Lon L. Fuller, *Anatomy of the Law* 18 (Greenwood Press 1976).

SUPREME COURT
OF
NEVADA

(O) 1947A

The text of the Minimum Wage Amendment, by enumerating specific exceptions that do not include taxicab drivers, supersedes and supplants the taxicab driver exception set out in NRS 608.250(2). We accordingly reverse the district court's dismissal order and remand for further proceedings consistent with this opinion.

_____, J.
Cherry

We concur:

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Douglas

SUPREME COURT
OF
NEVADA

(O) 1947A

PARRAGUIRRE, J., with whom GIBBONS, C.J., and SAITTA, J., agree, dissenting:

I would affirm the district court's order dismissing Thomas's complaint because the Amendment was only intended to increase the minimum wage amount.

We presume that a statute is constitutional, and a party who challenges the constitutionality of a statute must clearly show its invalidity. *Martinez v. Maruszczak*, 123 Nev. 433, 448-49, 168 P.3d 720, 730 (2007). Moreover, implied repeal is disfavored in Nevada. *Presson v. Presson*, 38 Nev. 203, 208, 147 P. 1081, 1082 (1915). "'Where express terms of repeal are not used, the presumption is always against an intention to repeal an earlier statute . . . .'" *W. Realty Co. v. City of Reno*, 63 Nev. 330, 344, 172 P.2d 158, 165 (1946) (quoting *Ronnow v. City of Las Vegas*, 57 Nev. 332, 365, 65 P.2d 133, 145 (1937)); *see also In re Advisory Op. to the Governor*, 132 So. 2d 163, 169 (Fla. 1961) ("Implied repeals of statutes by later constitutional provisions [are] not favored and . . . in order to produce a repeal by implication the repugnancy between the statute and the Constitution must be obvious or necessary.").

We have stated that "'the interpretation of a . . . *constitutional provision will be harmonized with other statutes.*'" *Landreth v. Malik*, 127 Nev. ___, ___, 251 P.3d 163, 166 (2011) (alteration in original) (emphasis added) (quoting *We the People Nev. v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008)). We "apply the plain meaning of a statute unless it is ambiguous." *Id.* A provision is ambiguous if "'it is susceptible to two or more reasonable but inconsistent interpretations.'" *Id.* (quoting *Miller v. Burk*, 124 Nev. 579, 590, 188 P.3d 1112, 1120 (2008)). In order to

interpret an ambiguous constitutional provision, we look to the provision's history and public policy to determine the intended interpretation. *Id.*

Because the Amendment and NRS 608.250 both address minimum wage, I would attempt to harmonize these provisions. *See id.* Reading NRS 608.250 and the Amendment together, an ambiguity becomes readily apparent. Namely, it is unclear whether the Amendment raises the minimum wage without altering NRS 608.250(2)'s exemptions or whether it impliedly repeals the exemptions, as the majority concludes. Both of these interpretations of the Amendment appear reasonable. As a result, I would conclude that the Amendment is ambiguous and must be interpreted in light of its history and public policy. *Landreth,* 127 Nev. at ___, 251 P.3d at 166.

Since 1965, the Nevada Wage and Hour Law, codified in NRS Chapter 608, has governed employment compensation, wages, and hours for employees in Nevada. NRS 608.250(1) authorizes the Labor Commissioner to "establish by regulation the minimum wage which may be paid to employees in private employment within the State." "Taxicab and limousine drivers" are not entitled to this minimum wage.[1] NRS 608.250(2)(e).

In 2006, the Amendment was ratified by the voters, increasing the state minimum wage. *See* Nev. Const. art. 15, § 16(A). Although NRS

---

[1] "Casual babysitters" are also exempted from minimum wage entitlement. NRS 608.250(2)(a). Therefore, because the majority concludes that the Amendment impliedly repeals NRS 608.250(2), even casual babysitters will be entitled to minimum wage. This is an absurd result that the Amendment should be interpreted to avoid. *See J.E. Dunn Nw., Inc. v. Corus Constr. Venture, L.L.C.,* 127 Nev. ___, ___, 249 P.3d 501, 505 (2011).

Chapter 608 has been in existence since 1965 and addresses the same subject matter as the Amendment, the Amendment does not mention these long-standing statutes. We should presume that if the voters intended to restructure the entire legislative scheme, they would have done so explicitly. *Cf. State Indus. Ins. Sys. v. Woodall*, 106 Nev. 653, 657, 799 P.2d 552, 555 (1990) (stating that if the Legislature intended a particular result, it "would have indicated as much in the statutes themselves so the judiciary would not be required to divine such a rule out of thin air").

Moreover, the provision's title, "Raise the Minimum Wage for Working Nevadans," does not hint at any intended alteration of the NRS 608.250(2) exemptions. Nevada Ballot Questions 2006, Nevada Secretary of State, Question No. 6.[2] Similarly, the condensed ballot question only asked whether "the Nevada Constitution [should] be amended to raise the minimum wage," and made no mention of changing the group of employees entitled to minimum wage. *Id.* At the very least, if the Amendment was intended to repeal the NRS 608.250(2) exemptions, the arguments regarding the Amendment would have mentioned NRS Chapter 608, but they do not. *Id.* Therefore, I would conclude that the Amendment was only intended to raise the minimum wage amount, rather than abolish long-standing exemptions from the group of employees entitled to minimum wage.

The majority states that the public understanding of the Amendment must control our interpretation. Given that the

---

[2]*Available at* https://nvsos.gov/Modules/ShowDocument.aspx?documentid=206.

Amendment's title, condensed ballot question, and arguments regarding the ballot question fail to mention any changes to Nevada law besides increasing the minimum wage, there is no basis for the majority's conclusion that the public understood that the Amendment would repeal the NRS 608.250(2) exemptions. Rather, the public understood that the Amendment would only increase the minimum wage.

We must presume that implied repeal was not intended and the exemptions set forth in NRS 608.250(2) are constitutional. *Martinez*, 123 Nev. at 448-49, 168 P.3d at 730; *Presson*, 38 Nev. at 208, 147 P. at 1082. Because the Amendment was neither intended nor understood to do more than raise the minimum wage amount, I would conclude that these presumptions have not been rebutted and would affirm the district court's order of dismissal.

Accordingly, I dissent.

_____, J.
Parraguirre

We concur:

_____, C.J.
Gibbons

_____, J.
Saitta